IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICTOR APODACA,

    Plaintiff,

v.                                                                             No. 13-cv-0113 JB/SMV

STATE OF N.M. ADULT
PROB. & PAROLE, et al.,

    Defendants.[1]

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Defendants Hillis and Lueras' *Martinez* Report [Doc. 66]. Plaintiff[2] filed no response, and the time for doing so has passed. The case was referred to me by the Honorable James O. Browning, United States District Judge, for analysis and a recommended disposition. [Doc. 5]. I have construed the *Martinez* report as motion for summary judgment. *See* [Doc. 43] at 3 (notifying the parties that the report may be so construed). Having reviewed the *Martinez* report, the record, and the relevant law, and being otherwise fully advised in the premises, I recommend that Defendants' motion summary judgment [Doc. 66] be **DENIED without prejudice**. I further recommend that Plaintiff's claim for injunctive relief be **DENIED as moot** because he has been released from custody. Finally, I

---

[1] In a Memorandum Opinion and Order dated February 13, 2014, the Court dismissed all claims against Defendants New Mexico State Police, State of New Mexico Adult Probation and Parole, Gerry Billy, FNU Sandoval, FNU Lucero, FNU Wagner, FNU Boone, and FNU Padilla, and Curry County Detention Center. [Doc. 22] at 46. Later, on April 6, 2015, the Court dismissed all claims against Defendants Wesley Hatley and Susan Pautler. [Doc. 65]. At this time, the only remaining Defendants are Timothy Hillis and Nancy Lueras.

[2] At all times relevant to this suit, Plaintiff has been proceeding pro se and *in forma pauperis*. The Court liberally construes Plaintiff's filings because he appears pro se. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). It appears that Plaintiff was incarcerated when he initiated this action on February 4, 2013. However, apparently he was released on February 14, 2013; later, re-incarcerated and re-released at least once more; and as of January, 2015, was free. [Doc. 7] at 1; [Doc. 50]; [Doc. 66] at 7 n.2.

have referred this case to the pro bono panel with a request that a panel member consider contacting Plaintiff for possible representation.

## Background

Plaintiff was booked into the Curry County Detention Center ("CCDC") on September 7, 2012, for a parole violation. He alleges that Defendants violated his Eighth Amendment right by denying him proper medical care. [Doc. 3]. His relevant factual allegations are as follows:

> On September 7, 2012, I arrived to Curry County Detention Center [where] I requested immediate medical attention. [Certain non-party corrections officers] and Head Nurse Nancy Lueras all denied me proper medical attention even after reviewing my leg's [sic]. [CCDC]'s medical staff has only given me IBU's [sic] for the constant pain I am in, and a[n] elastic knee brace. Now I am stricken to a wheel chair. On September 24, 2012, I was finally taken to [Plains Regional Medical Center] for a[n] MRI[, and the] results showed a complete torn ACL and Meniscus along with other medical issues. On Oct 1, 2012[,] Doctor Hillis informed myself, medical staff, and administration that surgery was needed. PRMC informed Dr. Hillis I needed to be seen by a[n] Orthopedic Specialist, but Dr. Hillis disregarded what PRMC informed him.

[Doc. 3] at 2. These are the entirety of Plaintiff's allegations. *See* [Doc. 3].

Defendants explain—and Plaintiff does not dispute—that Plaintiff injured his knee on the night of his arrest. [Doc. 66] at 5. Apparently, while attempting to flee the police, he fell from a fence and injured himself. Then, later that night while seated at a table at the detention center, Plaintiff "began banging his knees up on the table as hard as he could." *Id.* Irrespective of how Plaintiff injured his knee, it is undisputed that a September 24, 2012 magnetic resonance image ("MRI") showed a completely torn anterior cruciate ligament ("ACL"). [Doc. 66-3] at 2 ("complete grade III midsubstance tear [with] diffuse interstitial injury involving the anterior cruciate ligament"). The MRI also showed a "complete tear of the medial meniscus posterior

2

horn[.]" *Id.* at 3.  A few days later, on September 27, 2012, Defendant Dr. Hillis referred Plaintiff to an orthopaedist for possible surgery.  [Doc. 66-2] at 5 ("Consult/Referral to orthopaedics for possible surgery of [right] knee").  Dr. Hillis's note is also signed by Defendant Lueras.  *Id.*; [Doc. 66] at 6.

However, Plaintiff never saw an orthopaedist, or any other specialist, and was never evaluated for possible surgery.  The record indicates that Joan Martin, Certified Nurse Practitioner ("CNP"), noted in Plaintiff's chart that she had attempted to follow-up on Dr. Hillis's referral—but not until December 6, 2012, about 70 days after the referral was made. [Doc. 66-2] at 3.  CNP Martin left a message for Dr. Herr (whom defense counsel describes as the medical director at Correctional Health Care Companies, Inc.,[3] at the time).  *Id.*; [Doc. 66] at 6.  CNP Martin's note reflects that Dr. Herr had not returned her call as of December 7, 2012. [Doc. 66-2] at 3; [Doc. 66] at 6.  Beyond CNP Martin's notes in early December, the record does not reflect any attempt to carry out Dr. Hillis's referral.

Defendants offer no explanation for why the referral was not carried out.  Instead, Defendant Lueras avers that she had "no decision making authority about whether or when a patient would be referred to an outside facility for medical care [and had] no decision making authority regarding whether or when [Plaintiff] would be seen by an outside doctor for his knee." [Doc. 66-4] at 4.

Defendant Dr. Hillis did not provide any testimony on the matter.  CNP Martin explained in her affidavit that Dr. Hillis "has been diagnosed with Alzheimer's disease and is currently residing in a long-term care facility."  [Doc. 67-1] at 1–2.  CNP Martin further avers that

---

[3] Defendants explain that Correctional Health Care Companies, Inc. maintained a professional services agreement to provide medical services to inmates housed at CCDC.  [Doc. 66] at 9.

"Dr. Hillis is not able to provide any testimony in this case as he has no memory of the relevant events." *Id.* at 2.  Finally, CNP Martin explains that "[a]s a medical care provider, I saw Mr. Apodaca while he was incarcerated at CCDC.  I did not consider Mr. Apodaca's pain to be emergent.  On at least one occasion I instructed Mr. Apodaca to exercise his knee." *Id.*

Plaintiff was treated with ibuprofen, an elastic knee brace, a wheelchair, and CNP Martin's order to exercise the knee.  [Doc. 66-2] at 1–13.  There is no dispute that during Plaintiff's incarceration, he doggedly requested pain medications other than ibuprofen and to be seen by a specialist for a surgical evaluation.  [Doc. 66-2] at 14–48 (26 Inmate Health Service Requests by Plaintiff, almost all of which related to his knee).

## Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If this burden is met, the party opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  Although all facts are construed in favor of the nonmoving party, it is still the nonmoving party's responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in

order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

For purposes of summary judgment, a prisoner's complaint is treated as an affidavit if it alleges facts based on his personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111. A *Martinez* report is also treated as an affidavit. *Id.* A court cannot resolve material disputed factual issues by accepting a *Martinez* report's factual findings when they are in conflict with pleadings or affidavits. *Id.* at 1109. However, conclusory allegations without specific supporting facts have no probative value and cannot create a genuine issue of fact. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005); *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992). As is true with all affidavits, statements of mere belief must be disregarded. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006).

The Court liberally construes Plaintiff's filings because he is appearing pro se. *See Hall*, 935 F.2d at 1110. Nevertheless, a non-moving party must still "identify specific facts that show the existence of a genuine issue of material fact." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (internal quotation marks omitted). Conclusory allegations are insufficient to establish an issue of fact that would defeat the motion. *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 557 (10th Cir. 2001).

## **Analysis**

"A prison official violates an inmate's clearly established Eighth Amendment rights if he acts with deliberate indifference to an inmate's serious medical needs—if he knows of and disregards an excessive risk to inmate health or safety." *Garrett v. Stratman*, 254 F.3d 946, 949

(10th Cir. 2001) (internal quotation marks omitted). Stated differently, prison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their deliberate indifference to serious medical needs of a prisoner constitutes unnecessary and wanton infliction of pain. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

An Eighth Amendment claim of deliberate indifference to serious medical needs requires the plaintiff to demonstrate "both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Under the objective inquiry, the "alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (citing *Farmer*, 511 U.S. at 834). Plaintiff's medical condition must have been diagnosed by a physician as mandating treatment, or be so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002); *see also Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (severe chest pain, non-fatal heart attack, and damage to heart could meet objective component, assuming causation had been established); *Oxendine v. Kaplan, 241 F.3d 1272* (10th Cir. 2001) (objective standard met where the plaintiff's severed fingertip turned black from necrosis and could not be reattached); *Palmer v. Board of Comm'rs for Payne Cnty.*, No. 11-6021, 441 F. App'x 582, 584–85 (10th Cir. Oct. 14, 2011) (unpublished) (affirming district court's denial of qualified immunity to jail administrator who ignored doctor's specific instructions to return inmate to the ER if his pain increased and instead denied the plaintiff treatment altogether); *Weatherford v. Taylor*, No. 09-7018, 347 F. App'x 400, 403 (10th Cir. Oct. 5, 2009) (unpublished) (severe chest pain and a subsequent fatal heart attack meets the objective prong); *Dicino v. Renfro*, No. 12-cv-01274-WYD-KLM, 2013

WL 2317242 (D. Colo. May 28, 2013) (unpublished) (finding that the plaintiff stated a claim for deliberate indifference to serious medical need where he received no treatment for two months for a painful, full-body rash, while he waited to see a physician and then never received the prescribed steroids).

The subjective component requires "evidence of the prison official's culpable state of mind." *Mata*, 427 F.3d at 751. The subjective component may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* That is, the prisoner must show that the defendant[ ] knew [that the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation marks omitted); *see Martinez v. Garden*, 430 F.3d 1302, 1304–05 (10th Cir. 2005). The pertinent question is whether the prisoner's symptoms were such that the defendant "knew the risk to the prisoner and chose (recklessly) to disregard it[.]" *Mata*, 427 F.3d at 753.

Additionally, "[a] prison medical professional who serves 'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1211).

<u>There is evidence on which a reasonable jury could rely to find that<br>Defendants were deliberately indifferent to Plaintiff's serious medical need.</u>

Defendants argue that there is no evidence that they denied Plaintiff necessary medical care or that they knowingly disregarded an excessive risk to Plaintiff's health and safety. [Doc. 66] at 7. I disagree. On the record as it stands, in the light most favorable to Plaintiff,

7

there is evidence on which a reasonable jury could rely to find that Defendants were deliberately indifferent.  Therefore, Defendants are not entitled to summary judgment at this time.

Specifically, Plaintiff's ACL and medial meniscus were completely torn.  As a result, Dr. Hillis referred Plaintiff to an orthopaedist for a surgical evaluation.  Although both Defendants were aware of the severity of Plaintiff's injuries, and aware of Dr. Hillis's referral, Plaintiff was never actually sent to any orthopaedist, nor evaluated for surgery.  Beyond CNP Martin's undated opinion that Plaintiff's "pain was not emergent," there is no explanation for why Dr. Hillis's referral was not carried out.  Despite Plaintiff's multiple and consistent requests for treatment for his knee, there is no evidence of any treatment for these injuries beyond ibuprofen, an elastic knee brace, and a wheelchair.  Despite Plaintiff's multiple and consistent requests for an explanation about why he was not being sent to a specialist, the record (including the affidavits of Defendant Lueras and CNP Martin) say nothing.  A reasonable jury could rely on the record as it currently stands to find that Plaintiff's completely torn ACL and medial meniscus were sufficiently serious to meet the objective prong.  There is also evidence on which a reasonable jury to could rely to find that Defendants were deliberately indifferent to Plaintiff's serious medical need and, thus, that Plaintiff meets the subjective prong.

I wish to be quite clear about the narrow scope of my findings herein.  I do *not* find that the evidence in this case actually does sustain Plaintiff's claim for deliberate indifference to serious medical need.  Rather, on the record as it stands today, taking the evidence in the light most favorable to Plaintiff, I find that Defendants fail to meet their burden as movants to show either an absence of evidence to support Plaintiff's case, or that the undisputed material facts entitle them to judgment as a matter of law.

<u>Defendants' Motion to Dismiss should be denied.</u>

Defendants argue that Plaintiff's Amended Complaint [Doc. 3] should be dismissed because "Plaintiff failed to identify a sufficiently serious medical condition, failed to identify what Defendants did or did not do to deny or delay medical care, and failed to demonstrate the subjective element of deliberate indifference." [Doc. 66] at 8 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  I recommend denying the motion for several reasons.

First, the motion is untimely. *See* Fed. R. Civ. P. 12(b) (motions to dismiss for failure to state a claim "must be made before pleading[.]").  Here, Defendants filed their Answer on September 9, 2014. [Doc. 40]. Because this motion is made well after the pleading was filed, it is untimely under Rule 12. Second, there is no reason to construe the motion as one for judgment on the pleadings under Rule 12(c) (which would not be untimely) because Defendants' arguments do not rest on their Answer in any way.  Third, even if I found that the Amended Complaint [Doc. 3] failed to state a claim, Plaintiff would be given an opportunity to amend his pleading before dismissal would be warranted. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991) ("[P]ro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings.").  Fourth, and more to the point, the undisputed facts on the current record do not show that Defendants are entitled to judgment as a matter of law.  I find, therefore, that application of the summary judgment standard to the entire record (as I notified the parties on October 3, 2014, [Doc. 43] at 3), is more appropriate than ignoring the *Martinez* report to apply the *Twombly/Iqbal* standard to the Amended Complaint.  Thus, I recommend denying Defendants' motion to dismiss.

<u>Defendants' Motion for Summary Judgment</u>
<u>based on qualified immunity should be denied.</u>

Finally, Defendants argue that they are entitled to qualified immunity. [Doc. 66] at 9. However, they conflate their vulnerability to suit under 42 U.S.C. § 1983 with the protections of qualified immunity. The two are not necessarily coexistent. *See Richardson v. McKnight*, 521 U.S. 399, 413 (1997) (holding that under the circumstances of that case, the private-prison-guard defendants could not assert qualified immunity but nevertheless may be subject to § 1983 liability); *Filarsky v. Delia*, 132 S. Ct. 1657, 1667 (2012) (distinguishing *Richardson* and holding that under the circumstances, the privately employed defendant could assert qualified immunity); *Franco v. Bd. of County Comm'rs*, No. 14-2134, 2015 U.S. App. LEXIS 6022 (10th Cir. Apr. 14, 2015) (unpublished) (applying *Richardson* and *Filarsky* to hold that the independently contracted probation-officer defendant could assert the defense of qualified immunity). Here, the allegations and evidence regarding the circumstances of Defendants' employment are not adequate to analyze whether they, as privately employed medical care providers, might be entitled to raise the defense of qualified immunity. Accordingly, I decline to make findings on the matter one way or the other and recommend that Defendants' motion be denied without prejudice to the extent that they assert qualified immunity.

**Conclusion and Recommended Disposition**

Defendants fail to meet their burden as movants to show either an absence of evidence to support Plaintiff's case or that the undisputed material facts entitle Defendants to judgment as a matter of law.

Accordingly, I respectfully recommend that Defendants Hillis and Lueras' *Martinez* Report [Doc. 66] be construed as a motion for summary judgment and **DENIED without prejudice**.

Additionally, because Plaintiff has been released from custody, I recommend that his claim for injunctive relief [Doc. 3] at 3 be **DENIED as moot**. *See White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996).

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**